# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIM. ACTION NO. 3:18-CR-0235-S |
| | § | |
| JEAN LOUI VARGAS-MALAVE (2) | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Jean Loui Vargas-Malave's ("Vargas-Malave") letter motion requesting compassionate release or home confinement [ECF No. 400] and Motion for Leave to Amend the Original File Motion for Compassionate Release due to COVID-19 [ECF No. 402]. For the following reasons, the Court **DENIES** his requests for compassionate release and for release to home confinement.

### I.   BACKGROUND

Vargas-Malave was convicted of Conspiracy to Possess with Intent to Distribute a Schedule II Controlled Substance in violation of 21 U.S.C. § 846. *See* ECF No. 385. On January 31, 2020, the Court sentenced him to 120 months' imprisonment, to be followed by four years of supervised release. *See id.* at 2-3. Vargas-Malave is now 30 years old and is incarcerated at F.M.C. Fort Worth. Prior to sentencing, he reported that, in 2013, he was diagnosed with Type I Diabetes and hypoglycemia. *See* ECF No. 286-1, ¶ 81. The Court denied Vargas-Malave's initial request for compassionate release as premature on April 23, 2020. *See* ECF Nos. 389 & 392. He objected. *See* ECF No. 399. And, as ordered, *see* ECF No. 401, the Government filed a response, *see* ECF No. 403, to Vargas-Malave's objection and his letter motion. In addition, the Government's response addresses the Motion for Leave to Amend.

## II. EXHAUSTION

Under 18 U.S.C. § 3582(c)(1)(A), a district court may "reduce the term of imprisonment" upon a "motion of the defendant after the defendant has *fully exhausted* all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020). The exhaustion requirement set forth in § 3582(c)(1)(A) is "a glaring roadblock foreclosing compassionate release," especially where the "BOP has not had thirty days to consider [the defendant's] request to move for compassionate release on his behalf" or if "there has been no adverse decision by BOP for [the defendant] to administratively exhaust within that time period." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). In the present case, Vargas-Malave submitted a request for compassionate release on May 27, 2020, and the warden denied that request on June 1, 2020. *See* ECF No. 403-1 at 11; ECF Nos. 403-2 & 403-3. There is no record that Vargas-Malave then appealed this denial, much less that he has completed the administrative appeals process. Accordingly, the Court finds that he has not "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf."[1] 18 U.S.C. § 3582(c)(1)(A); *see United States v. Bruteyn*, No. 3:09-cr-136-M, Dkt. No. 276, at 3 ("Here, Defendant offers no proof that he attempted to exhaust his administrative remedies. He

---

[1] The Court recognizes that "several courts have concluded that [the exhaustion requirements] is not absolute and that it can be waived by the [G]overnment or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic." *Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020) (Higginson, J., concurring) (collecting authorities). But other courts have recognized that the statutory exhaustion requirement promotes fairness: "Remember that Congress made compassionate release available only to elderly prisoners and those with 'extraordinary and compelling' reasons for release. For such prisoners, time usually will be of the essence." An equitable exception to statutory exhaustion "would make nearly every prisoner eligible to invoke 'irreparable harm' and eligible to jump the line of applications—making the process less fair, not more fair." *United States v. Alam*, ___ F.3d ___, No. 20-1298, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). And, even if the Court excused Vargas-Malave's failure to fully exhaust his administrative remedies, he would not be entitled to compassionate release for the reasons explained below. *See infra* § III.

only states that the warden denied his request to be placed on home confinement under the CARES Act.").

### III. COMPASSIONATE RELEASE

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But, under Section 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *Chambliss*, 948 F.3d at 692-93 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *see id.* at 693 n.1. A court's decision must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Muniz*, ___ F. Supp. 3d ___, Crim. A. No. 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) ("Upon such a motion, a court may modify a defendant's sentence after considering the factors set forth in § 3553(a) to the extent applicable if it finds that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" (quoting 18 U.S.C. § 3582(c)(1)(A)(i)-(ii))).[2]

The policy statement applicable to compassionate release—U.S. Sentencing Guidelines Manual § 1B1.13—"sets forth three circumstances that are considered 'extraordinary and compelling reasons.'" *Muniz*, 2020 WL 1540325, at *1 (citing U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(1)(A) & cmt. n.1 (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."]).

---

[2] The Court construes Section 3582(c)(1)(A) as expressing Congress's preference that the BOP be the "initial gatekeeper" for compassionate release claims. *United States v. Jemal*, Crim. A. No. 15-570, 2020 WL 1701706, at *3 (E.D. Pa. Apr. 8, 2020). This construction reflects the reality that the BOP is "undoubtedly in the best position to assess any risks that might be posed to an inmate by his prison environment and the COVID-19 virus circulating within it." *Id.*

3

> Among these are the "medical condition of the defendant," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

*Id.* (alteration in original) (quoting U.S.S.G. § 1B1.13 cmt. n.1). "The policy statement also requires that the defendant not pose a danger to the safety of the community." *Id.* (citing U.S.S.G. § 1B1.13(2)).

Vargas-Malave is only 30 years old, but he does report an underlying medical condition (diabetes) that, according to the Centers for Disease Control, places him "as a higher risk of developing serious COVID-19 illness." *United States v. Sanmiguel*, No. 3:19-CR-630-B, 2020 WL 3036636, at *1 n.1 (N.D. Tex. June 5, 2020) (citation omitted). Even so, the Government represents in its response that Vargas-Malave tested positive for the virus on May 13, 2020 and "[h]e remained asymptomatic and [without a fever] and was discharged from isolation on May 26, 2020." ECF No. 403-1 at 10. In addition, included with the Government's response are more than 200 pages of medical records.[3] *See* ECF No. 403-4. These records do not reflect that the BOP is unable to manage Vargas-Malave's diabetes or any other of his underlying health concerns. The records, in fact, document at least one incident where he refused medical care from the BOP. *See id.* at 9. Vargas-Malave also has provided "no evidence that the safety measures the BOP has implemented at [FMC Fort Worth] are ineffective at protecting against [a future] spread of COVID-19." *Risner v. Fowler*, ___ F. Supp. 3d ___, No. 3:19-cv-03078-N (BT), 2020 WL 2110579, at *7 (N.D. Texas May 1, 2020) (citations omitted).

Vargas-Malave has therefore not established that he is "suffering from a serious physical

---

[3] Records are a necessity in cases like this one because the Court "must consider every prisoner individually and [is] cautious about making blanket pronouncements that [particular] categories of prisoners . . . warrant compassionate release, even given the unique circumstances of the COVID-19 pandemic." *United States v. Delgado*, No. 3:17-CR-242-B (01), 2020 WL 2542624, at *3 (N.D. Tex. 2020).

4

or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of [his] correctional facility." U.S.S.G. § 1B1.13 cmt. n.1. So, applying its discretion, the Court is not persuaded that his request for compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Nor is the Court persuaded that the applicable Section 3553(a) factors would support Vargas-Malave's motion, considering the seriousness of his offense and the length of time remaining on his custodial sentence.

Finally, to the extent that Vargas-Malave also requests that the Court release him to home confinement, the Court lacks the authority to do so. Included in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), PUB. L. NO. 116-136, the federal government's comprehensive response to COVID-19, are provisions expanding the BOP's "'authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.'" *United States v. Miller*, No. 2:17-cr-15-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) (citation omitted). "But neither the CARES Act nor the First Step Act authorizes the [C]ourt to release an inmate to home confinement." *Id.* (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Vargas-Malave's requests for compassionate release and for release to home confinement.

**SO ORDERED.**

SIGNED June 18, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**